# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

NIVEA LONG,

      Plaintiff,

      v.

THE CITY OF ORLANDO, FLORIDA, LISA EARLY, individually
and in her official capacity, and BRENDA MARCH
individually and in her official capacity,

      Defendants.

_____/

CASE NO.:  6:20-CV-00254

**COMPLAINT**

Plaintiff, NIVEA LONG, through her counsel, Ligon Law Group, LLC , hereby complains of the

Defendants, THE CITY OF ORLANDO, FLORIDA, LISA EARLY, and BRENDA MARCH and

alleges as follows:

## NATURE OF CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

   U.S.C. § 1981 ("Section 1981"), the Florida Civil Rights Act of 1992, Section 760.10 *et seq*.

   ( "FCRA"); and the Family and Medical Leave Act of 1996, 29 U.S.C. § 2601 *et seq*.

   ( "FMLA"), Equal Pay Act, 29 U.S.C. § 206(d) and 29 U.S.C. § 215(a)(3) (the "EPA"), the

   Pregnancy Discrimination Act of 1978 ("PDA"),  and seeks damages to redress the injuries

   Plaintiff suffered as a result of being exposed to sex/gender discrimination, pregnancy

   discrimination, perceived sexual orientation, unequal wages, hostile work environment,

   retaliation, negligent retention, negligent supervision, intentional infliction of emotional

   distress, and wrongful termination.

2. This action is to redress Defendants' unlawful employment practices against Plaintiff,

   including Defendants' unlawful discrimination and harassment against Plaintiff because of

her sex/gender, pregnancy, and Defendants' retaliation against Plaintiff her persistent complaints of discrimination and for requesting leave under the FMLA, all leading to her unlawful termination.

## JURISDICTION AND VENUE

3. This is an action for monetary damages, in excess of fifteen thousand dollars, and injunctive relief pursuant to Title VII, FCRA § 760.10, EPA, FMLA, and PDA.

4. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII, the EPA, FMLA, PDA.

5. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. §1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because Defendants were located in this judicial district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

## PROCEDURAL REQUIREMENTS

7. Plaintiff has complied with all statutory prerequisites to filing this action.

8. On or around April 1, 2016, Plaintiff dual filed her charge with the Equal Employment Opportunity Commission ("EEOC"), Charge number 461-2016-00074.

9. On or around May 5, 2017, Plaintiff dual filed her charge with the EEOC an additional time, Charge number 461-2017-00060.

10. On or around May 19, 2017, Plaintiff dual filed her charge with the EEOC an additional time, Charge number 15F-2017-00060.

11. On or around November 15, 2019, Plaintiff received the EEOC's Right to Sue Letters in reference to her above EEOC charges.

12. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the EEOC's Right to Sue Letter.

13. This complaint was filed within ninety (90) days of the issuance of the EEOC's notice of conciliation failure and Right to Sue letter.

14. An EEOC filing automatically operates as a dual FCHR filing.

## **PARTIES**

15. At all material times, Plaintiff NIVEA LONG (hereinafter referred to as "Plaintiff" or "LONG") is an individual woman who is a resident of the State of Florida and resides the Orlando, Florida.

16. At all material times, Defendant THE CITY OF ORLANDO, FLORIDA (hereinafter referred to as "Defendant", "City of Orlando", or "CITY") was and is a municipality existing by the virtues and laws of the State of Florida, operating in Orange County.

17. Defendant CITY is an employer as defined by the all laws under which this action is brought and employs the requisite number of employees.

18. At all material times, Defendant BRENDA MARCH (hereinafter referred to as "MARCH" or "DEFENDANT"), was and is an individual woman believed to reside in the state of Florida and live in Orange County.

19. At all material times, Defendant MARCH was and is a supervisor for CITY. MARCH worked as CITY's Children & Education Manager and in 2011, she became the supervisor of LONG.

20. At all material times, Defendant LISA EARLY (hereinafter referred to as "EARLY or "DEFENDANT"), was and is an individual woman believed to reside in the state of Florida and live in Miami-Dade County.

21. At all material times, Defendant EARLY was and is a supervisor for CITY. EARLY worked as CITY's Family Parks & Recreation Director and she was a supervisor of both LONG and MARCH.

22. At all material times, CITY, MARCH, and EARLY are herein referred to collectively as "Defendants."

## STATEMENT OF FACTS

23. At all material times, LONG is an individual heterosexual woman.

24. In or around April 12, 2002, the CITY hired LONG as a Youth Counselor on a part-time basis.

25. From 2007- 2011, TONI SHINN (hereinafter "SHINN"), a female employee and supervisor for the city CITY and supervised Plaintiff LONG.

26. At all material times beginning in 2011, MARCH became LONG's supervisor.

27. In 2011, LONG when was pregnant with her first child.

28. During this time, MARCH informed LONG, "**IF [SHINN] WAS ANY TYPE OF MENTOR TO YOU, YOU WOULDN'T GET PREGNANT**."

29. MARCH understood that LONG's comment was due to prejudice against women that chose to have both a career and be a mother.

30. In or around 2014, CITY made LONG a full time employee Staff Assistant/Youth Activities Coordinator for CITY's Families, Parks & Recreation Department.

31. At all material times, It was a part of LONG's job duties as Staff Assistant/Youth Activities Coordinator to be physically active, help coach children, provide transportation, and participate in community outreach outdoors. Because LONG's duties, it was necessary and common for her and other employees in her position to wear clothing that allowed them to move in a comfortable and safe manner while partaking in their duties.

32. At this time, CITY began to pay LONG less than similarly situated males in her same position. LONG first noticed this difference when CITY hired MARCUS MOORE (hereinafter "MOORE"), a male, as Defendant CITY's Staff Assistant/Youth Coordinator and paid him more than her although both had the same job title and duties.

33. Beginning in 2011 and grew with intensity until 2017, MARCH, CITY's Children & Education Manager, subjected LONG to derogatory/offensive comments and remarks regarding LONG's perceived sexual orientation, her consistently subjected LONG to intimidating verbal abuse, and threatened her job.

34. At all material times, MARCH also imposed restrictions on LONG's dress and appearance in the workplace, which MARCH considered unprofessional because it was not feminine enough. MARCH required LONG to wear clothing and shoes that were more feminine—as MARCH wore—such as dresses, skirts, heels, and other feminine shoes.

35. MARCH would allow the men in the workplace to wear the same type of clothing that LONG wore—such as pants an Bermuda shorts—but would single LONG out because she was a woman and wanted her to conform to her sex. MARCH would embarrass LONG by pointing LONG out to new employees as an example of how not to dress, and point out other women who dressed more feminine as examples of what to wear.

36. These dress policy restrictions resulted in unwarranted and unsubstantiated discipline of LONG and created an extremely hostile work environment.

37. MARCH did not place the same restrictions on male employees that worked with LONG, such as MOORE, EVAN WILLIAMS and other male employees.

38. At all material times, MARCH provided preferential treatment to male employees over LONG.

39. The hostile work environment explained above, which was created by CITY and MARCH, continued until the day that CITY terminated LONG.

40. Although LONG was heterosexual, MARCH would insist that she was a lesbian and that LONG was in a sexual relationship with her former supervisor, SHINN, who was also a woman. MARCH would not only tell LONG this, but would inform other members of their Department and would do so in meetings.

41. MARCH would further threaten LONG's job at the CITY for being in the allege sexual relationship with SHINN.

42. In part, MARCH believed that LONG and SHINN were lesbians because they did not dress as femininely as other women and in comparison wore and liked things that were traditionally more masculine.

43. Between 2011 and 2017, MARCH would routinely ask LONG who she was dating.

44. Besides LONG, MARCH would also accuse other women in the office of being in hetero sexual and/or homosexual relationships, without their consent to disclose such facts or gossip.

45. Regardless of one's sexual orientation, such sexual commentary about female employees was improper in the workplace.

46. Because of MARCH's discriminatory and malicious comments on LONG's sexual orientation, MARCH greatly offended and distressed LONG because such the gossip about LONG's sexual preferences, was untrue and the sexual commentary was improper in the workplace.

47. LONG constantly refuted the accusation that she was homosexual and in a sexual relationship with SHINN, and she constantly requested that MARCH make such comments.

48. At all material times, because of MARCH's reckless and false gossip of LONG's sexual relationships and preferences, LONG's job was threatened for having contact with her former supervisor and her coworkers began to hold prejudice against LONG, which impacted her career.

49. On April 1, 2016, LONG filed a Complaint of Discrimination with the EEOC, case number 15F-2016-00074.

50. After filing her complaint, the workplace became even more toxic and CITY and MARCH began to retaliate against LONG for filing her complaint of discrimination with the EEOC. By way of example, beginning in or around August of 2016, CITY denied LONG a promotion, while advancing males in similar positions and continuing to pay similarly situated male employees more.

51. Further, because LONG opposed and complained of MARCH's sexist dress code policy, MARCH suddenly began to enforce the dress code used by other CITY Departments. In the history of the Parks and Recreation Department, such policies had never been applied to that Department due to its unique nature.

52. Moreover, when MARCH began to use this new 2016 policy, once again MARCH singled out LONG for her "tomboyish" attire while ignoring the same clothing choices worn by the men.

53. Around this same time, CITY breached confidentiality by intentionally sharing intimate details of LONG's personal life with the workplace, excluded LONG from job related meetings, had her assignments altered.

54. In furtherance of its retaliation for filing LONG's EEOC complaint, an ongoing attempt to remover her from employment began as CITY began its attempts to remove LONG from the Athletics Department Administration, despite LONG's excellent performance thus far.

55. Thereafter, MARCH's discriminatory behavior increased, causing LONG further anxiety and emotional distress in the workplace.

56. In an act of retaliation, and to further its violation of the Equal Pay Act, MOORE, a male coworker, was promoted in September of 2016 to Youth Development Coordinator, which caused an additional increase in his wages. MOORE did not have the qualifications required of this position, the required degree, or three year's experience required for this role. Until LONG learned of MOORE's promotion, she was unaware of any other persons being allowed to apply for or interviewed for the position. Moreover, at this time, both LONG and MOORE had similar qualifications and experience.

57. In or around November 2016, MARCH breached her confidentiality when she discussed LONG's personal information and her EEOC complaint with EVAN WILLIAMS, a former CITY employee.

58. Upon learning what MARCH disclosed, LONG became extremely emotional distressed and offended. LONG felt like MARCH and CITY were not taking her complaints of discrimination seriously and she was being ignored.

59. When LONG became aware that MARCH was discussing this information, LONG confronted MARCH. MARCH responded, "**IF YOU COMPLAIN TO ANYONE ELSE, I WILL EXPOSE A POST FROM FACEBOOK THAT YOU MADE.**"

60. LONG had no knowledge of the Facebook post MARCH referenced but in the context of a threat by MARCH and MARCH's prior discriminatory conduct directed towards her, LONG became afraid.

61. Because of MARCH's above threat, LONG attempted to have the situation rectified based on CITY's policy, so filed a complaint with EARLY, Family Parks & Recreation Director for CITY.

62. EARLY responded via her assistant, STACEY MAHAR-MARRERO (hereinafter "MAHAR-MARRERO"), that LONG should try to resolve the issues between her and MARCH independently, and if she could not get it resolved, only then she should file a Union Grievance. No further action was taken by CITY to help LONG.

63. On or about February 13, 2017, CITY granted a meeting for LONG—but only after LONG's concerned grandmother, LUCINDA FRAZIER, called the CITY to reported the continued mistreatment by MARCH and CITY.

64. MARCH, EARLY, and her supervisor were supposed to be present for the meeting. However, only EARLY appeared for the meeting with LONG.

65. LONG did not feel comfortable with meeting with them by herself.

66. At the meeting, LONG explained her complaints of discrimination and retaliation to CITY. Once again, EARLY told LONG that she and MARCH should attempt to resolve the dispute independently and only if such attempts failed, should LONG file a grievance. LONG felt ignored by CITY and EARLY.

67. At all material times, CITY failed to address the hostile work environment and LONG's complaints and the unlawful conduct continued.

68. Knowing that her employer was not assisting her and not changing her work environment caused LONG extreme stress and anxiety, as she loved helping her community and children via her job.

69. On or about February 28, 2017, because of Plaintiff LONG's anxiety, she was hospitalized and began treatment for her emotional distress, which included anxiety and depression, which her doctors said were caused by her hostile work environment.

70. After this hospitalization, she became ill and was forced to seek counseling for her depression and anxiety.

71. Effective March 1, 2017, LONG was subsequently placed on medical leave under the Family and Medical Leave Act ("FMLA").

72. Upon returning to work on March 23, 2017, LONG was called into a meeting with CONNIE ROYER (hereinafter "ROYER"), Retired/Seasonal Employee; BAMBI MCDOUGALD (hereinafter "MCDOUGALD"), Youth Intervention Coordinator; and MARCH.

73. At this meeting, CITY told LONG that her work would now have to be funneled through MCDOUGALD, and she would no longer have access to necessary data bases and other tools that were vital for her job. LONG's files, paperwork, referrals, and other documents were taken from her and she was left unable to fully perform her job duties.

74. Under MCDOUGALD's supervision, LONG was harassed by her and questioned LONG's medical situation which was already covered under FMLA.

75. On May 5, 2017, LONG filed another EEOC charge, number 15F-2017-00060. This additional EEOC complaint contained further claims of discrimination and retaliation against CITY because of the unaddressed hostile work environment.

76. At all material times, Defendants failed to provide her with evaluations in 2016 and 2017, which meant that she was not provided any promotion or raise.

77. On May 10, 2017, five days after LONG filed her EEOC charge against CITY, CITY terminated LONG.

78. At all material times, CITY never responded to Plaintiff LONGS's complaints.

79. The above are just some of the examples of unlawful discrimination and retaliation to which the Defendants subjected Plaintiff on an ongoing continuous basis.

80. Plaintiff claims a continuous practice of discrimination and claims a continuing violations and makes all claims herein under the continuing violations doctrine.

81. As a result of Defendants' continued harassment of Plaintiff, she suffered numerous injuries including physical, economic, and emotional damages.

82. Plaintiff demands to be reinstated to her previous position.

83. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, Plaintiff suffers from high stress, anxiety, and experiences trust issues with men in the work environments, in addition to physical ailments.

84. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

85. As Defendants' conduct has been malicious, reckless, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages as against Defendants.

## COUNT I: DISCRIMINATION UNDER TITLE VII
## [UNDERLINE]AGAINST DEFENDANT CITY[/UNDERLINE]

86. Plaintiff LONG realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1 through 85 above as if fully and expressly set forth herein, and further alleges as follows.

87. At all times relevant to this action, Plaintiff was and is a homosexual woman, that Defendants believed to be homosexual and accused of not dressing in a way that conformed to her sex/gender, making her a member of a protected class under Title VII and PDA.

88. Defendant MARCH's harassment, discriminatory treatment, and offensive comments were based on Plaintiff's sex/gender, perceived sexual orientation, and pregnancy.

89. As a result of Defendant MARCH's harassing conduct and offensive comments about her sex/gender, perceived sexual orientation, and pregnancy, such action adversely affected the terms, conditions, and privileges of Plaintiff's employment. Such conduct was so perverse as to alter the work environment and to create an abusive and hostile work environment.

90. Defendant MARCH's harassment and offensive comments were done knowingly and intentionally, and in willful, wanton and reckless disregard of Plaintiff's protected rights.

91. Defendants CITY, MARCH, and EARLY had actual notice or should have known of Plaintiff's harassment but failed to appropriately act.

92. Defendant EARLY was a high-ranking official which had actual notice or should have known of Plaintiff's frequent complaints and EEOC Charges but failed to appropriately act.

93. The Defendant's termination and harassment of Plaintiff was, in whole or in part because of Plaintiff's sex/gender, perceived sexual orientation, and pregnancy.

94. Defendant CITY discriminated against Plaintiff with respect to the terms, conditions and privileges of employment because of her sex/gender, perceived sexual orientation, and pregnancy. By way of example: she was harassed about her clothing, told she should not have gotten pregnant, paid less than men, not provided opportunities for advancement, had her told taken away, intimidated, and threatened.

95. At all material times, Plaintiff was a pregnant woman. While she worked for Defendants she was pregnant twice, and gave birth to her son and daughter.

96. At all material times, Plaintiff was a member of a protected class and as such benefits from the Pregnancy Discrimination Act.

97. Plaintiff was subject to disparate treatment on account of her pregnancy, and for being a woman who chose to carry her children.

98. At all material times, Plaintiff's termination was "significant change" in employment status.

99. Defendants MARCH's, EARLY's, and Defendant CITY' discrimination against Plaintiff was done knowingly and intentionally, and in willful, wanton and reckless disregard of Plaintiff's Federally protected rights.

100. As a direct and proximate result of Defendant MARCH's harassment of Plaintiff, and Defendant EARLY's, inaction Plaintiff has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and distress.

101. Defendants' actions or willful and done with malice.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendants, CITY, for damages, including reinstatement, compensatory, consequential, punitive damages if subsequently permitted by this Court, and all equitable relief, in addition to all litigation

expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

## COUNT II: RETALIATION UNDER TITLE VII
### [AGAINST DEFENDANT CITY]

102. Plaintiff LONG realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1 through 85 above as if fully and expressly set forth herein, and further alleges as follows.

103. At all times relevant to this action, Plaintiff was and is a person protected under FCRA and she engaged in protected activity when she complained of sex/gender, perceived sexual orientation, and pregnancy discrimination.

104. Plaintiff opposed Defendant MARCH's unlawful treatment of her.

105. Plaintiff complained of Defendant MARCH's harassment, discriminatory treatment, and offensive comments to Defendant EARLY, and filed charges with the EEOC.

106. Defendants CITY and EARLY had actual notice or should have known of Plaintiff's frequent complaints and EEOC Charges but failed to appropriately act.

107. Defendant EARLY was a high-ranking official which had actual notice or should have known of Plaintiff's frequent complaints and EEOC Charge but failed to appropriately act.

108. After Plaintiff opposed and complained of Defendant MARCH's harassment, discriminatory treatment, and offensive comments, Defendant MARCH and Defendant CITY retaliated against Plaintiff by denying Plaintiff certain terms, conditions and privileges of employment. By way of example, after Plaintiff opposed and complained of Defendant MARCH's harassment, discriminatory treatment, and offensive comments, Defendant MARCH and Defendant CITY retaliated against Plaintiff by denying Plaintiff certain terms, conditions and privileges of employment, continuing to harass her about her clothing and

not being feminine enough, taking away the documentation and tools she needed to complete her duties failing to provide evaluations in 2016 and 2017, denying promotions, and denying increased pay.

109. At all material times, Plaintiff's termination was "significant change" in employment status.

110. Defendant MARCH's adverse conduct and termination towards Plaintiff, and Defendants EARLY's and CITY's inaction was a direct result of Plaintiff's frequent complaints and EEOC Charges.

111. Defendants MARCH's, EARLY's, and Defendant CITY' retaliation against Plaintiff for complaining about the unlawful conduct of MARCH and filing an EEOC Charge of discrimination against CITY was done knowingly and intentionally, and in willful, wanton and reckless disregard of Plaintiff's Federally protected rights.

112. As a direct and proximate result of Defendant MARCH's harassment of Plaintiff, and Defendants EARLY's, and CITY's inaction and retaliation for her lawfully having engaged in statutorily protected activity, Plaintiff has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and distress.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendant CITY, for damages, including reinstatement, compensatory, consequential, punitive damages if subsequently permitted by this Court, and all equitable relief, in addition to all litigation expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

## COUNT III: FMLA INTERFERENCE
### [AGAINST DEFENDANT CITY]

113. Plaintiff LONG realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1 through 85 above as if fully and expressly set forth herein, and further alleges as follows:

114. At all material times, Plaintiff LONG suffers from a serious health condition as defined by the FMLA because of cancer remission and because of her serious emotional distress, anxiety, and depression.

115. At all material times, Defendant CITY was on notice of Plaintiff LONG's need of FMLA-qualifying leave, and the anticipated timing and duration of the leave.

116. At all material times, Plaintiff LONG was employed with her employer Defendant CITY for at least 12 months

117. At all material times, Plaintiff LONG worked at least 1,250 hours during the above 12-month period.

118. At all material times, Defendant CITY employed at least 50 employees within 75 miles of Plaintiff LONG's worksite.

119. At all material times, Plaintiff LONG requested FMLA documentation.

120. Defendant CITY interfered with, restrained, or denied Plaintiff the exercise of or the attempt to exercise her FMLA rights.

121. Defendant CITY' actions were willful, knowing and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

122. Plaintiff was injured due to Defendant CITY' willful violations of the FMLA, to which she is entitled to legal relief.

123. As a direct and proximate result of Defendant CITY violation of FMLA, Plaintiff has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and distress.

124. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendant CITY, for damages, including reinstatement, compensatory, consequential, punitive damages if subsequently permitted by this Court, and all equitable relief, in addition to all litigation expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

### COUNT IV: FMLA RETLIATION
### [AGAINST DEFENDANT CITY]

125. Plaintiff LONG realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1 through 85 above as if fully and expressly set forth herein, and further alleges as follows.

126. At all material times, Plaintiff LONG suffers from a serious health condition as defined by the FMLA because of cancer remission and because of her serious emotional distress, anxiety, and depression.

127. At all material times, Defendant CITY was on notice of Plaintiff LONG's need of FMLA-qualifying leave, and the anticipated timing and duration of the leave.

128. At all material times, Plaintiff LONG was employed with her employer Defendant CITY for at least 12 months

129. At all material times, Plaintiff LONG worked at least 1,250 hours during the above 12-month period.

130.  At all material times, Defendant CITY employed at least 50 employees within 75 miles of Plaintiff LONG's worksite.

131.  At all material times, Plaintiff LONG requested FMLA documentation.

132.  Defendant CITY interfered with, restrained, or denied Plaintiff the exercise of or the attempt to exercise her FMLA rights.

133.  Defendant retaliated against Plaintiff for exercising or attempting to exercise her FMLA rights once she returned to the workplace. By way of example, Defendant MARCH and Defendant CITY retaliated against Plaintiff by denying Plaintiff certain terms, conditions and privileges of employment, taking away the documentation and tools she needed to complete her duties, continuing to harass her about her clothing and not being feminine enough, failing to provide evaluations in 2016 and 2017, denying promotions, and denying increased pay.

134.  Plaintiff was injured due to Defendant CITY' willful violations of the FMLA, to which she is entitled to legal relief.

135.  As a direct and proximate result of Defendant CITY violation of FMLA, Plaintiff has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and distress.

136.  Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendant CITY, for damages, including reinstatement, compensatory, consequential, punitive damages if subsequently permitted by this Court, and all equitable relief, in addition to all litigation

expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court

deems to be just and proper.

## COUNT V: FCRA DISCRIMINATION
## [AGAINST ALL DEFENDANTS]

137._Plaintiff LONG realleges and adopts, as if fully set forth herein, the allegations stated in

Paragraphs 1 through 86 above as if fully and expressly set forth herein, and further alleges

as follows:

138.  At all times relevant to this action, Plaintiff was and is a heterosexual woman, that

Defendants believed to be homosexual and accused of not dressing in a way that conformed

to her sex/gender, making her a member of a protected class under the FCRA.

139.  Defendants MARCH and EARLY had actual notice of Plaintiff's sex/gender, perceived

sexual orientation, and pregnancy, but failed to appropriately act.

140.  Defendant violated the FCRA by terminating and discriminating against Plaintiff based her

sex/gender, perceived sexual orientation, and pregnancy. By way of example, Defendant

MARCH and Defendant CITY subjected Plaintiff to harassment and discriminatory

treatment by making offensive comments, denying Plaintiff certain terms, conditions and

privileges of employment, taking away the documentation and tools she needed to complete

her duties, continuing to harass her about her clothing and not being feminine enough,

failing to provide evaluations in 2016 and 2017, denying promotions, and denying increased

pay.

141.  Defendant MARCH's harassment, discriminatory treatment, and offensive comments were

based on Plaintiff's sex/gender, perceived sexual orientation, and pregnancy.

142.  At all material times, Plaintiff was a pregnant woman. While she worked for Defendants

she was pregnant twice, and gave birth to her son and daughter.

143.  At all material times, Plaintiff was a member of a protected class and as such benefits from the FCRA.

144.  Plaintiff was subject to disparate treatment on account of her pregnancy, and for being a woman who chose to carry her children.

145.  As a result of Defendant MARCH's harassing conduct and offensive comments about her sex/gender, perceived sexual orientation, and pregnancy, such action adversely affected the terms, conditions, and privileges of Plaintiff's employment. Such conduct was so perverse as to alter the work environment and to create an abusive and hostile work environment.

146.  Defendant MARCH's harassing conduct and offensive comments were done knowingly and intentionally, and in willful, wanton and reckless disregard of Plaintiff's protected rights.

147.  Defendant EARLY had actual notice or should have known of Plaintiff's harassment but failed to appropriately act.

148.  At all material times, Plaintiff's termination was a "significant change" in employment status.

149.  Defendant CITY's discrimination against Plaintiff was done knowingly and intentionally, and in willful, wanton and reckless disregard of Plaintiff's protected rights under Florida law.

150.  As a direct and proximate result of MARCH's harassment of Plaintiff, and EARLY's and CITY's inaction Plaintiff has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and distress.

151. P. laintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendant CITY in their official capacities for damages, including reinstatement, compensatory, consequential, punitive damages if subsequently permitted by this Court, and all equitable relief, in addition to all litigation expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

### COUNT VI: FCRA RETALIATION
### [AGAINST DEFENDANT CITY]

152. Plaintiff LONG realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1 through 85 above as if fully and expressly set forth herein, and further alleges as follows:

153. At all times relevant to this action, Plaintiff was and is a person protected under FCRA and she engaged in protected activity when she complained of sex/gender, perceived sexual orientation, and pregnancy discrimination.

154. Plaintiff opposed Defendant MARCH's unlawful treatment of her.

155. The Defendant's discharge and harassment of Plaintiff was, in whole or in part, in retaliation for her complaints of discrimination.

156. Plaintiff complained of Defendant MARCH's harassment, discriminatory treatment, and offensive comments to Defendants EARLY, and Defendant CITY' Human Resources, and filed a charge with the EEOC.

157. Defendant EARLY had actual notice or should have known of Plaintiff's frequent complaints and EEOC Charge but failed to appropriately act.

158. Defendant EARLY was a high-ranking official which had actual notice or should have known of Plaintiff's frequent complaints and EEOC Charge but failed to appropriately act.

159. After Plaintiff opposed and complained of Defendant MARCH's harassment, discriminatory treatment, and offensive comments, Defendant MARCH and Defendant CITY retaliated against Plaintiff by denying Plaintiff certain terms, conditions and privileges of employment.

160. At all material times, Plaintiff's termination was "significant change" in employment status.

161. Defendant MARCH's adverse conduct towards Plaintiff, and Defendant EARLY's inaction was a direct result of Plaintiff's frequent complaints and EEOC Charge.

162. Defendants MARCH's, EARLY's, and Defendant CITY's retaliation against Plaintiff for complaining about the unlawful conduct of MARCH and filing an EEOC Charge of discrimination against CITY which named MARCH was done knowingly and intentionally, and in willful, wanton and reckless disregard of Plaintiff's protected rights under Florida law.

163. As a direct and proximate result of Defendant MARCH's harassment of Plaintiff, and Defendants EARLY's and CITY's inaction and retaliation for her lawfully having engaged in statutorily protected activity, Plaintiff has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and distress.

164. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendant CITY, and Defendants MARCH, EARLY, in their official capacities for damages, including reinstatement,

compensatory, consequential, punitive damages if subsequently permitted by this Court, and all equitable relief, in addition to all litigation expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

## COUNT VII: EQUAL PAY ACT DISCRIMINATION
## [AGAINST DEFENDANT CITY]

165.  Plaintiff LONG realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1 through 86 above as if fully and expressly set forth herein, and further alleges as follows:

166.  Plaintiff claims Defendants violated the EPA, 29 U.S.C. §206(d)(1), which provides as follows:

(1) Prohibition of sex discrimination. No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

(2) No labor organization, or its agents, representing employees of an employer having employees subject to any provisions of this section shall cause or attempt to cause such an employer to discriminate against an employee in violation of paragraph (1) of this subsection.

(3) For purposes of administration and enforcement, any amounts owing to any employee which have been withheld in violation of this subsection shall be deemed to be unpaid minimum wages or unpaid overtime compensation under this chapter.

167. Plaintiff, as a female, was discriminated against by Defendants because of her sex/gender

and has suffered damages as set forth herein. Plaintiff also claims unlawful retaliation under the EPA for her opposition to Defendants' unlawful employment practices.

## COUNT VIII: NEGLIGENT RETENTION OF DEFENDANTS MARCH AND EARLY [AGAINST DEFENDANTS CITY AND EARLY]

168.  Plaintiff LONG realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1 through 86above as if fully and expressly set forth herein, and further alleges as follows.

169.  Defendants CITY and EARLY owed a duty of care to Plaintiff to protect her from Defendant MARCH's harassment, retaliation, and other inappropriate and unlawful conduct.

170.  Defendants CITY and EARLY breached its duty of care owed to Plaintiff by retaining MARCH and EARLY as supervisors in the Miami office, after it received actual or implied notice that MARCH was engaging discrimination and retaliation against Plaintiff.

171.  As direct and proximate consequences of Defendant CITY's negligent retention of MARCH and EARLY, Plaintiff has suffered serious physical, psychological, and emotional injuries that have required, or will require in the future, medical and psychological treatment

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendants CITY and EARLY, for damages, including reinstatement,  compensatory, consequential, punitive damages if subsequently permitted by this Court, and all equitable relief, in addition to all litigation expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

## COUNT XI: NEGLIGENT SUPERVISION OF DEFENDANTS MARCH AND EARLY [AGAINST DEFENDANT CITY]

172. Plaintiff LONG realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1 through 86 above as if fully and expressly set forth herein, and further alleges as follows:

173. Defendants CITY and EARLY knew or should have known:

a)  of Defendant MARCH's unlawful harassment and retaliation against Plaintiff,

b)  of Defendant MARCH's failures to comply with federal and state law,

c)  of Defendant MARCH's propensity to unlawful harass and retaliate against employees,

d)  that Defendant MARCH's that she was dangerous, incompetent, and a threat to do harm to employees under her supervision.

e)  of EARLY's failures to comply with federal and state law,

174.  Defendants CITY and EARLY owed a duty of care to Plaintiff to supervise Defendant MARCH in a manner that protects Plaintiff from discrimination, harassment, retaliation, working in a workplace without accommodations, and other inappropriate and unlawful conduct.

175.  Defendants CITY and EARLY owed breached its duty of care owed to Plaintiff by failing to supervise Defendants MARCH in a manner that took corrective action to prevent Defendant MARCH's discrimination, retaliation, and unlawful conduct against Plaintiff.

176.  The Defendant CITY owes a duty of care to Plaintiff to supervise Defendant EARLY in a manner that protects Plaintiff from discrimination, harassment, retaliation, working in a workplace without accommodations, and other inappropriate and unlawful conduct.

177.  The Defendant CITY breached its duty of care owed to Plaintiff by failing to supervise Defendants MARCH and EARLY in a manner that took corrective action to prevent

Defendant EARLY's negligence, discrimination, retaliation, and unlawful conduct against Plaintiff.

178. As a direct and proximate result of the Defendants CITY and EARLY's failure to supervise their subordinates in a manner that took corrective action to prevent and, if not prevent, to stop MARCH's conduct against Plaintiff, Plaintiff has suffered, and continues to suffer, loss of income, loss of enjoyment of life, emotional distress, pain and suffering, embarrassment, humiliation, and physical distress.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendants CITY, for damages, including compensatory, consequential, punitive damages if subsequently permitted by this Court, and all equitable relief, in addition to all litigation expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

### COUNT X: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS [AGAINST DEFENDANT MARCH & CITY]

179. Plaintiff LONG realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1 through 86 above as if fully and expressly set forth herein, and further alleges as follows:

180. Defendant MARCH's actions and comments about Plaintiff's gender, race, and national origin, mocking, taunting, and intentionally subjecting her to public humiliation and embarrassment —such as posting flyers around the office making fun of Plaintiff's Hispanic accent, her telling coworkers that Plaintiff was a prostitute—was intentional, extreme, and outrageous.

181. Such conduct and comments has caused, and continues to cause Plaintiff to suffer extreme emotional distress.

182. EARLY's and CITY's failure to take any remedial action after it received actual notice of Defendant MARCH's unlawful conduct and retaliation against Plaintiff, has further embarrassed and humiliated Plaintiff, and has cause, and continues to cause, Plaintiff severe emotional distress.

183. Defendant MARCH repeatedly, willfully and intentionally inflicted emotional distress on Plaintiff, or acted in reckless disregard of whether their conduct would cause emotional distress.

184. As a direct and proximate result of Defendant MARCH's, EARLY's and CITY's conduct toward Plaintiff, Plaintiff has suffered and continues to suffer, severe psychological and emotional injuries including degradation, humiliation, mental anguish, loss of the capacity for the enjoyment of life, loss of dignity, and other nonpecuniary and intangible injuries that have required, or will require in the future, medical and psychological treatment.

**WHEREFORE**, the Plaintiff requests that judgment be entered against the Defendants MARCH and CITY, for damages, including compensatory, consequential, punitive damages if subsequently permitted by this Court, and all equitable relief, in addition to all litigation expenses and costs, including attorneys' fees and any other lawful and equitable relief this Court deems to be just and proper.

## <u>JURY DEMAND</u>

Plaintiff requests a jury trial on all issues to be tried.

Dated: Orlando, Florida
February 13, 2020

Respectfully submitted,
Ligon Law Group, LLC d/b/a PrettySMART Law
/s/ Kelly O'Connell_____
Kelly O'Connell, Esq.

Fla Bar No.:  0119312
100 Biscayne Blvd. #1114
Miami, FL 33132
Phone: 888.779.7426
Fax 305.675.6190
Email: ko@kellyoconnelllaw.com

_____

Shannon A. Ligon, Esquire
Fla Bar No.:  59191
100 Biscayne Blvd. #1114
Miami, FL 33132
Phone: 888.779.7426
Fax 305.675.6190
Email: PrettySMARTLaw@gmail.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 13, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of the Notices of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically transmitted Notices of Electronic Filing.